**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Apollo Corporation, a Minnesota corporation,

Plaintiff and Counter-defendant,

v.

Mastercare Patient Equipment, Inc., a Nebraska corporation,

Defendant and Counter-claimant.

Civil No. 02-390 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Jeffer Ali, Esq., and Rebecca A. Bortolotti, Esq., Merchant & Gould, 80 South Eighth Street, Suite 3200, Minneapolis, MN 55402, counsel for Plaintiff and Counter-defendant.

John D. Sear, Esq., and David S. Miller, Esq., Bowman & Brooke, Suite 2600, 150 South Fifth Street, Minneapolis, MN 55402; Kent R. Erickson, Esq., Shughard Thomson & Kilroy, 120 West Twelfth Street, Suite 1500, Kansas City, MO 64105; and Gerald M. Kraai, Esq., Lathrop & Gage, 2345 Grand Boulevard, Suite 2800, Kansas City, MO 64108-2684, counsel for Defendant and Counter-claimant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 9, 2003, pursuant to cross motions for summary judgment. Plaintiff Apollo Corporation alleges that Defendant's products infringe Plaintiff's patent rights. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## Background

On October 26, 1993, the U.S. Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,255,400 ("the '400 patent") to Adrian Sween, who in turn assigned the patent to Plaintiff

FILED JUL 0 7 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Apollo Corporation ("Apollo"). The '400 patent is directed to a bathtub with a door in one of its walls; the door provides access for individuals with compromised mobility or agility.

Defendant Mastercare Patient Equipment, Inc. ("Mastercare") produces a bathtub with a door in one end; the product is known as the Integrity Bathing System ("Integrity"). Apollo asserts that Integrity infringes claims 3 and 7 of the '400 patent.

Independent claims 3 and 7 of the '400 patent both cover an "[a]pparatus for containing liquid, comprising: a tub having a wall with a door therein . . . ." Both claims go on to specify:

> said door for entry by a person, said tub also including means for operating said door, said door operating means including hinge means for swinging said door between open and closed positions, said hinge means including first and second means for pivoting said door, said first pivoting means swinging said door between the open and closed positions about a first axis located near a tub sidewall, said second pivoting means having a second axis near a vertical centerline of said door for angularly orienting said door with respect to a door opening in said tub, said door operating means further including means for sealing between said door and said tub and means for locking said door closed thereby maintaining the integrity of said sealing means, said sealing means including a seal element and wherein said locking means includes means for forcing said door from inside said tub to outside said tub against said seal element, said locking means including a lock member pivotably attached to said second pivoting means, said locking means further including a receiver member attached to said tub near a side of said door opposite said second pivoting means, said lock member engaging said receiver member to lock said door closed with respect to said tub.

Mastercare asserts that the '400 patent is invalid or unenforceable for a number of reasons. Mastercare further asserts counterclaims for tortious interference with contractual relations, tortious interference with prospective contractual relations, unfair competition, and libel.

The matter is currently before the Court on Apollo's motion for summary judgment on the issues of invalidity and unenforceability and on Mastercare's motion for summary judgment of non-infringement.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

Patent claim construction, *i.e.*, the interpretation of the patent claims that define the scope of the patent, is a matter of law exclusively for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) *aff'd* 517 U.S. 370 (1999). Both parties assert that the Court must construe the claim language at issue before further addressing the motions pending before the Court. The Court agrees. However, while the parties' briefs address limited issues of claim construction, they do so in a piecemeal fashion rather than in the comprehensive, coherent fashion that would accompany a *Markman* hearing. Accordingly, the Court will, at this time, limit itself to interpreting those elements of the claims that are dispositive of the motions before it rather than attempting to cobble together a full claim construction chart.

## 2. Infringement

The Court finds that, as a matter of law, the accused product does not read on the following claim limitation: "said locking means including a lock member pivotably attached to said second pivoting means . . . ." Accordingly, the accused product does not literally infringe claim 3 or claim 7 of the '400 patent.

Apollo asserts that Mastercare's product reads on this claim limitation because the locking means[1] (the cam) is "free to pivot" and because it is attached to a horizontal member called the "swing arm" which in turn is attached to the second pivoting means (the pneumatic

---

[1] The parties dispute which element of the Mastercare product constitutes a "locking means" and whether or not there is a second pivoting means. However, for the limited purpose of this motion, the Court takes the evidence in the light most favorable to Apollo and adopts Apollo's perspective on these two issues. If the Court were to adopt Mastercare's position, that a mechanism on the pneumatic cylinder that prevents further adjustment of the door position is the element of the Mastercare product that corresponds to the claims' "locking means," the Court would nevertheless find no literal infringement, because this other locking element is not pivotably attached to anything.

cylinder situated at the center of the door mechanism). However, the cam is not pivotably attached to the second pivoting means.

Claim interpretation "begins with the language of the claim itself." *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999) (*citing Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995)). The terms of a claim are given their ordinary meaning as understood by one of ordinary skill in the art, unless the inventor intended the terms to be construed otherwise. *Hockerson-Halberstatdt, Inc. v. Avia Group Intern., Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000); *Karlin Technology, Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971 (Fed. Cir. 1999).

Neither party has suggested that the words "pivotably" and "attached" have meanings in the context of mechanical engineering, either generally or with respect to bath tubs, that differ from the ordinary meanings those words have to a layperson. The claim limitation requires not only that the locking means be attached to the second pivoting means, but that the attachment be pivotal. The Court finds, as a matter of law, that the claim limitation requires that the locking means be in physical proximity to the second pivoting means and that the "interface" between the locking means and second pivoting means allow the locking means to pivot relative to the second pivoting means.

Apollo seems to argue that the pivotal attachment can be accomplished by having the locking means pivot and be connected, however tenuously and with however many intervening structures, to the second pivoting means. Not only does this construction require a strained interpretation of the plain meaning of the claim language, it is inconsistent with the prosecution history of this patent. "[T]he prosecution history (or file wrapper) limits the interpretation of

claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

In a response to the PTO, the patentee distinguished the invention claimed in the '400 patent from a similar device disclosed in a "510(k) pre-market notification submittal document to the Food & Drug Administration (FDA)" ("the 510(k)").[2] Specifically, the patentee noted that, unlike the invention disclosed in the '400 patent, "the 510(k) does not show locking means having a lock member pivotally attached at the second pivoting means." Declaration of Kent R. Erickson, Ex. 8, at MAS01589-90. The 510(k) does show a tub door with a "swivel post" attached to the center of the door, and the "door pivots or swivels on this post"; a "hinge bar" running from the swivel post to the side of the door; and a "locking lever," attached to the hinge bar at the side of the door, that rotates to cause the door to lock.[3] In other words, the 510(k) discloses a pivoting locking means remotely "attached" to a centrally located second pivoting means by a non-pivoting bar. If, as the patentee asserted during the prosecution history, the

---

[2] In the response to the PTO, the patentee disputed whether the 510(k) was a printed publication for purposes of 35 U.S.C. § 102(b). Apollo, however, seems to concede that the 510(k) constitutes prior art.

Moreover, for purposes of construing the language of the '400 patent in the context of the prosecution history, the "printed publication" status of the 510(k) does not matter; it is sufficient to note that the patentee did not consider the configuration disclosed in the 510(k) to fall within the ambit of the claim language.

[3] Apollo disputes that the locking lever mechanism disclosed in the 510(k) is a "locking member" within the meaning of that term in the '400 patent. Specifically, Apollo points to the Declaration of Dr. Barry Feinberg in which Dr. Feinberg opines that a locking means must cause the door to seal with the tub; in the 510(k) device, the sealing function is achieved through inflation of a rubber gasket. However, it is clear from the claim language that the "locking means" is distinct from the "sealing means" and that the function of the "locking means" is to immobilize the door in the closed position.

claim limitation of the '400 patent does not cover the configuration of the 510(k), then it cannot cover the configuration embodied in the Mastercare tub.

Moreover, because the "[p]rosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application," *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1376 (Fed. Cir. 1999), Apollo's infringement claim under the doctrine of equivalents is precluded, and summary judgment is appropriate.

**3. Invalidity**

Mastercare has asserted a counterclaim that the '400 patent is invalid for failing to name the proper inventor and unenforceable because the named inventor intended to deceive the PTO when submitting a patent application that misidentified the inventor. Apollo has brought a motion for summary judgment on this issue, asserting that the record would not support a reasonable jury finding in favor of Mastercare.

The record before the Court presents a wealth of conflicting evidence regarding who conceived of which elements of the '400 patent and when. The Court finds that summary judgment on this issue is not appropriate.

The Court notes, however, that to the extent that Mastercare asserts the '400 patent is invalid as anticipated by the 501(k) document discussed above, that theory does not stand in the face of the Court's interpretation of the claim limitation of a "lock member pivotably attached to said second pivoting means." As discussed above, the plain meaning of the '400 patent as well as the patentees remarks during prosecution of the '400 patent indicate that the claim limitation in the '400 patent is different from the configuration described in the 501(k).

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment of Non-Infringement (Doc. No. 46) is **GRANTED**, and Plaintiff's claims for literal infringement and infringement under the doctrine of equivalents are **DISMISSED WITH PREJUDICE**; and

2. Plaintiff's Motion for Summary Judgment of Non-Invalidity (Doc. Nos. 37 and 61) is **DENIED**.

Dated: July 7, 2003

DONOVAN W. FRANK
Judge of United States District Court